

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Sheppard:

Opinion No. O-2060
Re: Exemption of lumber yards
selling attic fans, kitchen
fans, ventilators, etc. for
installation in houses and
buildings, from the chain
store tax levied by Article
1111d, Penal Code of Texas.

We are in receipt of your letter of March 13, 1940, requesting the opinion of this department upon the following question, which we quote therefrom:

"A number of manufacturers of attic
fans, kitchen fans, and ventilators of
all types, place their merchandise with
lumber yards. This merchandise has to
be installed by a carpenter or a mechanic,
and is a permanent fixture in a house. A
majority of this merchandise is sold after
the house is built and completed.

"Are lumber yards that sell this
type of merchandise subject to the
'store tax,' or may such merchandise
be considered building material?"

Article 1111d, Penal Code of Texas, creates the
following exemption from the chain store tax levied thereby:

"Provided that the terms, 'store,
stores, mercantile establishment or
mercantile establishments' wherever
used in this act shall not include:
wholesale and/or retail lumber

and building material businesses en-
gaged exclusively in the sale of lum-
ber and building material; * * *"

In approaching this question of statutory in-
terpretation we recognize and shall be guided by the
rule laid down by the decisions of this State and opin-
ions of this department, that statutes exempting persons
and property from taxation must be strictly construed in
favor of the taxing authority and against the taxpayer,
contrary to the general rule regarding taxes, because it
is to be presumed that the Legislature, by express terms,
exempted all that it intended to, and nothing will be add-
ed by implication. Therefore, unless the property and
material vended in the instant case falls squarely within
the term "building material," then the lumber yards in
question would undoubtedly be subject to the license tax
levied by the above cited article, because, by no conceiv-
able construction, could such property be brought within
the only other term of the exemption, to-wit: "lumber".
We would then have a situation of a lumber yard selling
a part of its products under the exemption and a part out-
side the exemption, and prior opinions of this department
have held that in such instances the exemption is not
available.

There being no statutory definition of the term
"building material," we are relegated to the lexicograph-
ers, legal and otherwise, and to such persuasive author-
ity as may be found in other jurisdictions, because none
have been handed down by our courts.

A "building" as defined by Webster is: "That
which is built; as now generally used, a fabric or edi-
fice, framed or constructed, designed to stand more or
less permanently, and covering a space of land for use
as a dwelling, storehouse, factory, shelter for beasts
or some other useful purpose."

A "building" as defined by Bouvier's Law Diction-
ary is: "An edifice, erected by art, and fixed upon or
over the soil, composed of brick, marble, wood, or other
proper substance, connected together, and designed for
use in the position in which it is so fixed."

The courts of the several states have variously
defined the term "building" as embracing anything from

a hovel or lean-to to a mansion or large tenement building, but, in the generality of these definitions and of those above quoted, it is to be noted that the two qualities of _permanence_ and _use_ are essential attributes. Whether the structure is designed to shelter man or beast, any material or substance "connected together, and designed for use in the position in which it is so fixed," for the useful purpose intended, seems to be a component part of the term "building" as defined.

The term "building material," which is the exact term under consideration here, has been given even a wider signification by the courts than the term "building". In the case of Wood Preserving Corporation vs. State Tax Commission, 179 So. 254, the Supreme Court of Alabama, in construing an act imposing a tax upon gross sales of every firm retailing building materials to contractors, builders, or land owners for resale or use in the form of real estate, made the following enlightening comments:

> "It is first insisted by appellant that the term 'building materials' has a very definite and well-understood meaning in the trade. It is insisted that such materials 'consist of lime, plaster, lumber, nails, and such things as ordinarily go into the fabrication of a building. * * * The term has never been applied to railroad rails, cross-ties or telephone or telegraph poles, which are especially designed for the construction of standard railroads, tracks and telephone and telegraph lines.'

> "We are fully persuaded that appellant's learned counsel has rather confused the word building, employed as an adjective, in the exception to exemptions, with the same word when used as a noun. The material used in building a railroad, a bridge, a telephone or telegraph line, a dam or fence, is building material. In fact the term 'building material' as

employed in the exception is sufficiently comprehensive to include material of all kinds used in construction work. And we are fully persuaded that the lawmakers, in framing the act in question, and in employing the term, intended it should be given the meaning as above stated. To say that the Legislature intended to confine the term building material to only such material as might be used in constructing a building with sides and covering would unduly narrow the true meaning of the exception." (Underscoring ours)

In the case of Schaible vs. Board of Adjustment of Millburn, Tp., 194 A. 388, the court observed that "building materials normally consist not only of lumber, bricks, stone and iron, but of paints, varnishes, and many other subtances used in building construction."

The above authorities are cited as those most favorable to an enlarged or liberal interpretation of the term "building materials". To our mind, however, they are not controlling.

It is a familiar canon of statutory construction (and expressly so by statute itself with us, Rev Civ. Stat., Art. 10-1) that words in a statute are used in their ordinary and popular sense unless a contrary intention is apparent. Now, building materials in the popular and ordinary sense of that term means those materials ordinarily used in the construction of buildings. Lumber, shingles, rock, brick, tile, cement, lime, paint, varnish, paper, canvas, glass, nails, hinges, locks, and the like, are familiar articles falling within the ordinary and popular meaning of the term. To the ordinary mind these are the things contemplated by the expression or term "building materials." They are the things which enter into the fabrication of the building proper. (See Ellis vs. Cochran, 26 S. W. 243).

It is further a familiar rule of statutory construction that exemptions or exceptions contained in a statute are not to be liberally construed, but on the contrary are to be strictly construed. So that, we are not at liberty to indulge a broad and liberal construction of the term so as to include articles not within the commonly accepted popular meaning of the words.

Many articles actually enter into the construction of buildings that do not fall within this definition of building materials. The plumbing, electrical fixtures, ventilating apparatuses, numerous built-in features of accessories or utilities, and the like may be mentioned as such articles. Such things when attached to the building do become fixtures -- that is, a part of the building, and, therefore, a part of the realty -- but it does not follow that they are within themselves "building material."

It cannot justly be said that fabricated articles of utility, such as electrical appliances, gas appliances, bath and toilet fixtures, ventilators, heating systems, and cooling systems, are within themselves building materials. They are things suitable for use in buildings and may, of course, be suitably attached to the buildings as fixtures, becoming a part of the buildings. But this does not in anywise militate against our construction that they are not of themselves building materials. When such articles have been fabricated they are no longer materials for construction -- they are the finished fabric.

It is not true that everything attached to, and therefore a fixture to a building, is itself "building material". Many appropriate and useful or ornamental things may be thus made fixtures, which, under no sort of construction, could be held to be "building material." Thus, valuable tapestries and even paintings may be permanently set in the walls and thereby made fixtures -- a part of the building and realty. No one would think of calling such articles "building materials". Upon precisely the same reasoning completely fabricated utilities however appropriate and even necessary to the enjoyment of the building attached to and becoming a part of the building, do not thereby become regalvanized into "building material."

We hold, therefore, that the manufactured articles mentioned by you are not "building materials" within the statutory exemption of the Penal Code quoted at the beginning of this opinion.

If further reasons were needed for our conclusion, we have it in this: A classification of stores and mercantile establishments based solely upon the ground that one such store or establishment engaged in the taxed business likewise engages in another and further activity not

thus taxed, would be supported by scant reason or basis jeopardizing even the validity of the statute. Of course, it is an elementary rule of statutory construction that a construction which would render the Act constitutionally invalid will be avoided, where another reasonable construction making the Act valid, is to be found in the language.

Trusting that this will have answered your inquiry satisfactorily, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR

APPROVED MAY 2, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN